WILLIAM J. HUNT *et al.*, Appellants, *v.* JOHN B. WEIR, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

Where the general issue is filed, with a notice of special matter to be proved on the trial, if such special matter goes to the denial of the execution of a note sued on, the evidence offered to establish this fact will be inadmissible. Such a defense must be by plea verified by oath.

No issue of law or fact can be raised by such a notice.

A note is not executed unless it is delivered.

The Circuit Court may in its discretion allow further evidence to be heard, even after the case has been opened to the jury.

THE facts and pleadings in this case are fully stated in the opinion of Mr. Justice BREESE.

The jury found for the appellee, and judgment followed that finding.

HURD, BOOTH & POTTER, for Appellant.

BARKER & TULEY, for Appellee.

BREESE, J. This was an action of assumpsit, brought upon a joint and several promissory note. The declaration is in the usual form. The defendants pleaded the general issue, and gave notice, that upon the trial they would prove, that at or before the time the supposed note bears date, one C. M. Brown was indebted to the said Hamlin for a quantity of wood bought of him, and that it was arranged and agreed by said Brown and Hamlin, that Brown should give, and Hamlin receive in part payment for said indebtedness, a note of the amount, date, and time of payment, as mentioned in said supposed note, executed by himself as principal, and by the said defendants as sureties; that in pursuance of that agreement, the said supposed note was written out and handed to these defendants, and for the sake of convenience these defendants signed the same, leaving a place for the said Brown to put his name, as principal thereto, and for a time held the same in their possession, for the purpose of having the said Brown so execute the same; that the said Hamlin occupied the same office then occupied by the defendant, E. T. Hunt, who had the possession of said note, as aforesaid, and was then in partnership with said E. T. Hunt; that soon after the signing of said note by these defendants, for the purpose aforesaid, the same was taken from the possession of said E. T. Hunt, without his assent or knowledge, and without the assent or knowledge of either of said defendants, and that at the time it was so taken, the same had not been signed by said Brown, and that these defendants never made or delivered the said supposed note as their note, and never intended to be bound on said note, except as sureties, and then only, in case the same was duly executed by Brown as principal— of all which, Hamlin had notice, etc.

We have been thus particular in setting out, in full, the notice constituting the defense, so that the grounds upon which it was placed, may be distinctly seen.

The special matters contained in the notice, were sought to be proved by the deposition of Brown, who, it was alleged, was to have been the principal in the note.

When the deposition was opened to be read, the plaintiff

objected to it, on the ground that the testimony contained in it, tended to show the non-delivery of the note, and that this could not be proved under the issue, neither one of the defendants having filed any affidavit of the non-execution of the note.

The fourteenth section of the practice act is familiar to all. It is by the provisions of that section, a notice under the general issue is allowed, under which notice, if adjudged by the court to be sufficiently clear and explicit, the defendant is permitted to give evidence of the facts stated in it, as if they had been specially pleaded and issue taken thereon ; and in this connection, the same section declares, that no person shall be permitted to deny, on trial, the execution of any instrument in writing, whether sealed or not, upon which any action may have been brought, or which shall be pleaded or set up by way of defense or set-off, unless the person so denying the same, shall, if defendant, verify his plea by affidavit. (Scates' Comp. 254.) This notice goes to the execution of the note by the defendants, for a note cannot be said to be executed until it is delivered—the making is not complete without a delivery. (Edwards on Bills, 188.) This notice denies the making and delivery of the note as *their* note, and avers that they never intended to be bound by it, except as securities, and then only in case the same was executed by Brown as principal. It follows, if Brown never executed the note, there was no legal or valid execution of the note on their part, *ergo*, it was not their note. Suppose, instead of a notice, these facts had been in a special plea, is it not apparent, the plea would be disallowed, and ruled out for want of an affidavit verifying them ? They call in question the execution of the note, as a note binding on them, and as strong as language can do it, deny its execution as *their* note.

This court said, in the case of *Burgwin et al.* v. *Babcock et al.*, 11 Ill. 30, that it was irregular and incompetent to form either issues of law or fact on a notice under the general issue—that it is not a plea, and requires no answer from the plaintiff—that no question arises on a notice, until the defendant offers evidence to support it, on the trial, and if the notice

is then found defective, the court will not allow evidence to be given under it; or if the matters stated in the notice do not constitute a defense to the action, the evidence offered will be excluded.

Under this decision, the court should have excluded the deposition of Brown, for the reason that the matters set up in the notice, to be proved by Brown, constituted no defense to the action.

In the opinion of one member of this court, the rule established in this case of *Burgwin* v. *Babcock*, is considered as a very harsh one, and calculated to do great injustice. While it is admitted the notice of special matter is not, technically, a plea, it performs the office of a plea, and it is the duty of the court to see and "adjudge that it is sufficiently clear and explicit." This is preliminary to the offering of proof under it. If "adjudged by the court to be sufficiently clear and explicit, the defendant shall be permitted to give evidence of the facts therein stated." The first question to be determined under a notice of special matter would seem to be, is the notice clear and explicit? Until that is "adjudged," no evidence can be offered under it. How is it to be adjudged? In no other way than by stating the objections to it by a demurrer, which, by admitting the facts stated in it, brings up the question of their materiality, as constituting a defense. And how much safer is this for the defendant. He may suppose his notice is "sufficiently clear and explicit," there being no objection made to it, and he reposes upon it in fancied security, until on the trial, when it is too late to amend it, he is utterly discomfited by the ruling out of his evidence, on the ground of its not being "sufficiently clear and explicit," and which he then knows for the first time, and his case is lost.

Treating the notice as a plea, and open to demurrer, these consequences would be avoided. If a demurrer be sustained to the notice, the defendant can amend it, as he can a defective special plea, and he is in no danger of being caught in a trap, which, though he may have set himself by his defective notice, need not, to advance justice, be suddenly sprung upon him

on the trial of the cause. The quality of the notice is a preliminary matter, and should be determined before the trial. Like objections to depositions, they are heard and disposed of before the trial, and cannot be started for the first time on the trial.

The court allowed the deposition of Brown to be read, and the jury found a verdict for the plaintiff, and entered final judgment, from which the defendants have appealed to this court. During the progress of the trial, after the plaintiff's counsel had opened the case to the jury, and the defendants' counsel was about to address the jury, the plaintiff asked leave of the court to introduce a witness to prove the payment by the defendants, of the first of the two notes testified to by Brown, upon the ground that he had carelessly omitted to introduce the testimony at an earlier period. The defendants objected to granting leave, on the ground that the evidence was not offered in proper time; but the court overruled the objection, and permitted the witness to be sworn, with the right conceded to the defendants, to introduce any further testimony. To this decision the defendants excepted.

On this appeal, the defendants assign this ruling of the court as error, as giving the plaintiff an unfair advantage, and surprising the defendants.

This court held, in the case of *Bloom* v. *Gardner*, Breese, (new ed.) 64, on a similar objection, that it is at all times, and before all courts, a matter of discretion to hear testimony, after the argument of a cause is opened by counsel.

This decision is affirmed in *Russell* v. *Martin*, 2 Scam. 495, and in *Walsh et al.* v. *The People*, 17 Ill. 339. In this last case, the court say, this has been always held a matter of discretion with the court, and not assignable for error. Without such a discretionary power, sometimes the greatest injustice would be done. Courts will always exercise this discretion with caution, and to promote the ends of justice, and guard against surprise to the opposite party.

Brown, in his deposition, stated that he paid the first note, and in the hurry of trial, the plaintiff omitted to call his witness to testify to a different state of facts, that one of the

defendants paid the first note. That the defendants should not be surprised by this testimony, the court informed them that they might introduce other testimony, not only to this point, but generally in the cause. We cannot see that the court went beyond a reasonable discretion in admitting the testimony when offered, guarding the defendants, as it did, against surprise.

As to the merits of the case, they depended on the testimony of Brown. The jury could not have failed to observe the discrepancy between it and the statement of the defendants themselves in their notice. In the notice, it is averred that the note was written out and handed to them, and for the sake of convenience, they signed it, leaving a place for Brown to put his name as principal, and for a time they held the note in their possession for the purpose of having Brown execute it; that Hamlin occupied the same office, occupied by defendant E. T. Hunt, who had the possession of the note. Brown swears, " I put the notes (of which that in suit is one) in a drawer, until I got ready to finish the contract." " I put the note in the drawer, and that is the last I saw of this note." When asked to state in what place the drawer was, he answered, " it was in a little desk on the east side of the bank where I generally did my writing," and further says, he did not think about the note, until Hamlin left for California, in the spring after the note was made, when he looked for it, and could not find it. Hamlin was frequently in the bank. He further stated, that Hamlin and the defendants, each, had a desk of their own in the bank. He further stated, that in 1858, he made an assignment to W. J. Hunt, one of the defendants, of about thirty thousand dollars in notes and accounts, besides real estate, and that he owed about that amount, about two-thirds of which remained unpaid in 1860, when this note was given, and still remained unpaid—that he was engaged in no business from the time of the assignment until the date of this note, except in settling up his affairs—he had a contract previous to his assignment for building a railroad, which he finished after the assignment. The wood paid for by these notes, was sold by him to the Galena company. For it he

says he got checks, payable part to himself and part to Hunt; he settled the account himself, and deposited the money with Adsit, in Chicago, to the credit of Hamlin, Hunt & Company, which firm was composed of the payee of the note and one of the defendants. He states he finished the wood contract sometime in March, and thinks this note was written in March, —he supposes he was in such a condition of pecuniary embarrassment, at the time of the wood contract, as to render it inexpedient for him to hold property in his own name, or to engage in business in his own name—and supposes if the wood had been levied on, they would have got about half of it. Hamlin left for California three or four weeks after the wood contract was finished up. The other note given on the wood contract, was payable in October, 1860, he thinks, and he says he paid it.

This is substantially the testimony of Brown. Barker, a witness for plaintiff, testified, that the first of the two notes referred to by Brown, was sent to the office of Barker & Tuley for collection, of which, witness notified the defendants at Sycamore, by letter, a few days after which the defendant, Edwin T. Hunt, came to the office in Chicago and paid him the note, saying nothing about Brown's connection with the note, and that his firm never knew or heard of Brown having anything to do with the notes, or the consideration thereof, until after the second note (the note in suit) was received and payment demanded—the first note was received by his firm about the time it became due, and was paid in October last. Here was a direct contradiction of Brown, and must have operated powerfully with the jury in finding the verdict. This, and the discrepancy between Brown's testimony and the statement of the defendants that they held the notes, was a complete extinguisher upon their chance for a verdict. The jury must have placed confidence in Barker's testimony about the payment of the first note, and in the defendants' statement of their holding the notes for Brown to sign, and in coming to the conclusion they did, reasoned, probably, somewhat in this way—Brown and the defendants were good friends—had their desks in the same room of the bank—he had assigned his

property, to the amount of thirty thousand dollars, to one of the defendants—was hopelessly insolvent—checks that he drew for moneys due him were, some of them, payable to Hunt, and on settlement of his wood account the money was deposited to the credit of a firm of which Hunt was a partner. Brown's name to a note could not give it any additional value; Hamlin being about to start for California, goes to his partner, one of these defendants, to whose credit Brown had deposited his money, and who, in his notice says he held the notes, to give him the notes without Brown's name upon them, which is done, and when the first note falls due, the defendants pay it without demur, never claiming they were not bound to pay the note by reason that Brown had not signed it, or claiming that Brown was to sign it, or that their liability was in any way contingent. It is so reasonable to suppose this claim would have been made if it had any existence, when payment of the first note was demanded, and all these are far more consistent and probable than that Hamlin stole the note from the drawer, which is so strongly insinuated by Brown. There can be but little, if any doubt, from all the facts and circumstances, that Hunt delivered both notes to Hamlin, who was willing to take them without Brown's name to them, if it was to have been put there, and they by the signature and delivery of the notes are bound to pay them. The jury could not well have found otherwise, and found the truth of the case.

The judgment is affirmed, there being no error in the record to the prejudice of the defendants.

*Judgment affirmed.*