ROBINSON & CO., Appellants, v. BERKEY & MARTIN.

**Warranty:** TIME TO REPLACE: *Jury question.* A warranty given on the sale of certain machinery provided that if the machinery could not be made to fill the warranty, plaintiffs should either furnish another machine, or return the purchase price. Plaintiff's expert, on September 21st, left the machine as a failure and on the next day plaintiff's agent was notified of the fact. Nothing further was done or offered by plaintiffs, and on September 26th, defendants rescinded the contract. *Held,* that the question whether plaintiffs were given a reasonable time in which to replace the machine was properly left to the jury. *Manuf. Co. v. Spitznogle,* 54 Iowa, 36, distinguished.

PRACTICE: *Instructions.* The question being whether a warrantor had reasonable time in which to give notice that he would do nothing further with the article warranted, it was, perhaps, erroneous to submit what was a reasonable time, as a pure question of fact. It is ordinarily a mixed one of law and fact. It should have gone to the jury with certain limitations, but the failure to do this, is waived by failure to request such action.

Construction: *Breach as to parts of machine.* A provision in an order for a machine that the failure of the warranty as to any separate part or attachment of the machine shall not affect the liability of the purchaser, except as to such part or attachment, does not apply to a part or attachment furnished with the machine at a gross price.

Breach of warranty: *Construction of contract.* Where a separator and stacker are sold under a contract providing that, "if the stacker cannot be made to fill the warranty, it shall be removed from the separator," a failure to remove the stacker is not a breach of the contract; both stacker and separator having failed to work.

**Constructive Delivery of Machine:** passing of title. Plaintiffs sold defendants certain machinery, and defendants gave old machinery and their notes in payment. The notes were delivered to plaintiff's agent, who told defendants to leave the old machinery on his farm till further order, which was done. *Held,* that the title of the old machinery passed to plaintiffs, though they did not have actual custody of it, neither the satute of frauds or the rights of third persons being involved.

**Pleadings as Evidence:** jury question: *Delivery of notes.* Plaintiffs sold defendants certain machinery and gave a written warranty, which provided that failure to settle at the time and place of delivery should be a waiver of the warranty, without affecting the liability of defendants for the price. Defendants gave notes in part payment. In a suit to recover the price of the machinery, a petition for an injunction, under which a writ had issued, restraining plaintiff's agent from turning the note over to plaintiff, was introduced to show that the terms of settlement had not been complied with by defendants, in that they had not delivered the notes to plaintiffs absolutely, but only to their agent in *escrow.* Defendant's amended answer alleged that the notes were given according to contract, though the original answer alleged that they were given in *escrow. Held,* that whether an absolute or conditional delivery of the notes was made, was for the jury.

*Appeal from Johnson District Court.*—Hon. M. J. Wade, Judge.

Tuesday, May 22, 1900.

Action upon written orders for the price of certain farm machinery sold by plaintiffs to defendants. The de-

fense was a breach of warranty, together with rescission of the contract. Trial to jury. Verdict and judgment for defendants. Plaintiffs appeal.—*Affirmed.*

*Remley, Ney & Remely* for appellants.

*Baker & Ball* for appellees.

WATERMAN, J.—This case was here on a former appeal. 100 Iowa, 136. The statement of the issues there made will suffice, with the exception of a change in the defense presented by way of amendment to the answer after the case was remanded. Defendants withdrew the following clause of the original answer: "Further answering the said first count, they admit that they refused to deliver to plaintiff the said 33-inch cylinder Roberts, Thorp & Co., thresher, the Reeves stacker, the Perfection weigher, the oats and timothy sieves; but they deny that they have continued to use the same, and aver that they only refused to deliver as they refused to deliver said notes,—that is until the said new outfit by them purchased should be made to comply with the warranties given by the plaintiff in making the sale thereof, and they say plaintiff agreed thereto." They also allege a modification of the contract of purchase, and waiver of some of its terms, by one Dunlap, an agent of plaintiffs, whose authority therefor they assert to be in writing. We shall make no further statement of the facts here than is necessary to an understanding of the points ruled. Defendants, in writing, ordered of plaintiffs a thresher, feeder, band cutter, and weigher, for which they agreed to give in exchange a Roberts & Thorp thresher, etc., and to execute their two notes, for two hundred and twenty-five dollars each. The order also contained this clause: "Said notes to be made payable to the order of Robinson & Co., payable in bank, and without relief from valuation or appraisement laws. The undersigned agrees to give chattel mortgage on

machinery above ordered, and other security thereon, subject to the approval of Robinson & Co." The machinery so ordered was warranted by plaintiffs on these conditions: "Conditioned, that if, inside of ten days from the day of the first use of the said machinery, it shall fail to fill the warranty, written notice shall be given immediately by the purchaser to Robinson & Co., at Richmond, Indiana, by registered letter, and written notice, also, to the local agent through whom the same was received, stating particularly what parts and in what way it fails to fill the warranty, and a reasonable time allowed the company to get a man or men to the machine and remedy defects, if there be any (if it be of such nature that a remedy cannot be suggested by letter). The purchaser also to render all necessary and friendly assistance and co-operation in making the machinery a practical success. If any part of the machinery cannot thus be made to fill the warranty, that part shall be returned by the purchaser to the place where it was received; and the company shall either furnish another machine, part, or attachment, which shall perform the work, or return the money and notes which it received for the machine, or give credit for the amount received for the part or attachment which may have failed to fill the warranty, and thereby be released from any further liability herein. The failure of any separate machine, part, or attachment shall not affect the contract or liability of the purchaser for any other separate machine, part, or attachment which is not defective. Failure to settle for the machinery at the time and place of delivery, or failure to give written notice as provided, or failure to render friendly assistance as herein also provided for, or any abuse, misuse, or unnecessary exposure or waste committed or suffered by the purchaser, shall be a waiver of the warranty and release of the warrantor, without in any way affecting the liability of the purchaser for the price of the machinery, or the notes given therefor. Notice: The machinery above described is ordered, pur-

chased, and sold subject to this warranty, and no other, either expressed or implied. No agent or salesman has general agency powers, and is authorized only to make sales according to special instructions, and subject to approval at the home office. All agreements must be in writing, and contained in this order. No agent or salesman has power to bind the company by either verbal or written contracts or promises outside of this contract. This contract not to be binding on the company until accepted by Robinson & Co. at its home office, at Richmond, Indiana." At the time of giving the above order, defendants also gave plaintiffs a written order for a straw stacker to go with the thresher. This also contained a warranty, the conditions of which were substantially those above set out, so far as the issues here are concerned, save that in case of a breach the stacker was "to be removed from the separator."

II. It is not seriously disputed that the machinery sold (both thresher and stacker) failed to fulfill the terms of the warranty. But it is claimed that the warranty was waived by defendants failing to settle therefor as agreed. While it is true that the original answer alleged that the notes for the machinery were given Dunlap (plaintiffs' agent in Iowa City) in escrow, by agreement with plaintiffs, and substantially the same averment is made in a petition for an injunction filed by defendants, under which a writ issued, restraining Dunlap from turning the notes over to plaintiffs, yet, in the answer as we now have it, defendants allege that the notes were given according to contract. The petition for an injunction was introduced in evidence, to show by its allegations that the terms of settlement had not been complied with by defendants, for that they had not delivered said notes to plaintiffs absolutely. The answer as it stands, and the petition for injunction, were duly verified. It is undisputed that the notes were signed and delivered to Dunlap, who was authorized to receive them for plaintiffs. We think it was for the jury to say, under these

circumstances, whether an absolute delivery of the notes was made. No other evidence on this point is in the record. But it is charged that in another respect there was a failure to make the settlement as agreed, by reason of which plaintiffs were relieved of their warranty. The Roberts & Thorp thresher which defendants were to give in part payment for the outfit purchased was not brought at the time, and left by defendants at the place where the notes were given, and it is said that in this respect they failed to keep their contract obligation. The only provision in the agreement on this subject is as follows: "Failure to settle for the machinery at the time and place of agreement    *    *    *    shall be a waiver of the warranty, and release of warrantor, without in any way affecting the liability of the purchasers," etc. Defendant Berkey testified that Dunlap, who was admittedly plaintiffs' agent to make settlement, told him to leave the Roberts & Thorp machine on the farm of said defendant, where it then was, until further orders; and this was done. The claim of appellants is that Dunlap's authority did not extend so far as to authorize him to waive any part of the written order. On the other hand, it is asserted on behalf of defendants that his act in relation to this matter was authorized by a letter from plaintiffs to them. We need not, in the view we take, give attention to this matter of the letter; for, although it was submitted to the jury to find whether the letter mentioned conferred this authority on Dunlap, or may have been reasonably understood to do so, yet this, as we shall attempt to show, was without prejudice. When defendants executed and delivered the notes, and placed the old machinery at the disposal of plaintiffs' agent, were they required to do more, if no more was desired? It may be that Dunlap could have insisted that actual possession of the machine be given him at the time and place of settlement, but it does follow that he was obliged so to do. Suppose he had delivered the bill of lading and received the notes at his resi-

dence, but desired the machine taken to his warehouse, or suppose, as quite likely was the case, that he was not ready to care for the machine he was to receive, and, after its offer and acceptance, had desired defendants to hold it for him for a time; would it not be going too far to say that no settlement was had? The thought of appellants seems to be that the giving of actual custody of the machine was necessary to constitute delivery. We must bear in mind that neither the statute of frauds nor the rights of third persons is in question. The word "deliver" is used in the law sometimes with reference to the passing of the property or title, and sometimes to the change of possession. Here it should be understood in the first of these senses. When title to the old machine passed, settlement was made. In Benjamin Sales, section 675, it is said: "In general, it would be perfectly proper, and even technical, to speak of the buyer of goods on credit as being in possession of them, although the actual custody may have been left with the vendor. The buyer owns the goods, has the right of possession, may take them away, sell or dispose of them at his pleasure, and maintain trover for them." See, also, Parsons Contracts, 442. There can be no question but, as between the parties, the title to the old machine passed to plaintiffs on the completion of the transaction with Dunlap. If, then, the jury found in this case, as they must have done, an offer and acceptance of the old machine, there was, in law, a settlement with Dunlap, and the plaintiffs were not prejudiced by the fact that the court left to the jury to find the extent of the agent's authority; for it is conceded that he had authoritiy to make the settlement according to the terms of the contract. The case of *Davis v. Robinson*, 67 Iowa, 355, differs materially in its facts from the one at bar; for there defendant was not told to leave the machine at a place different from that of settlement, and he admits he did not deliver according to contract.

III. The next claim made is that plaintiffs, under the contract, had a right to exercise an option, which was denied them. The facts are that plaintiffs were notified as soon as it was discovered that the machine would not work properly, and they sent an expert (one Thomas) to put it in repair. Thomas failed in his efforts, and so notified plaintiffs. The contention of plaintiffs is that they should have been allowed a reasonable time in which to make further efforts, or to replace the machine with a new one, and that this was not done. Thomas was at defendants' place, working on the machine, on September 20th or 21st. On that day he announced his inability to make it operate as agreed. While defendants said to Thomas, on the day he announced the fact that he was unable to put the machine in order, that the contract was rescinded, yet he was but a special agent, and what was so said may be disregarded. On this same day defendants notified Dunlap that the machine could not be put in order, and expressed the wish to return it and rescind the contract. Dunlap refused. As a matter of fact, defendants did no positive or binding act in the nature of rescinding until they procured the writ restraining Dunlap from turning over to plaintiffs the notes which he still held, which was on September 26th. Plaintiffs' agent had notice on the 20th or 21st that the machine was a failure. Nothing further was done or offered by plaintiffs before the 26th, when the writ of injunction issued. In this respect the case differs from *Manufacturing Co. v. Spitznogle*, 54 Iowa, 36. In that case the attempt was made to rescind while plaintiffs were making every reasonable effort to put the machine in condition. Furthermore, that case was decided on the point that the machine was surrendered conditionally, and not absolutely. Were plaintiffs allowed a reasonable time in which to exercise their option? Their place of business was in Richmond, Indiana. Their agent in Iowa City had prompt notice of the facts. How quickly he or plaintiffs should have acted in notifying defendants that

plaintiffs intended doing something more was dependent, not on the latter's situation and circumstances only, but also on those of defendants. What is a reasonable time is ordinarily a mixed question of law and fact. *Derosia v. Railway Co.,* 18 Minn. 133. The court submitted the matter to the jury as a pure question of fact. This, perhaps, was erroneous. The legal rules governing should have been also stated, but this was not asked. On the contrary, plaintiffs requested. an instruction in which the jury was informed, as matter of law, that plaintiffs were not given a reasonable time in which to exercise their option. What time was reasonable in which to get a new machine to defendants would differ materially from the time that would be reasonable in which to notify them that something further would be done. It is in this last respect that the failure seems to have been made here; for such a notice would seem a necessary element of plaintiffs' right to furnish a new machine, unless the machine could be delivered as soon as notice could be given. Thomas left the machine as a failure on the 21st, at the latest, and said nothing of anything more being done to it. On the next day Dunlap was notified of the situation, and he gave no assurance whatever as to what plaintiffs would do. On the 26th, defendants took the action of which we have spoken. The question of fact as to what was a reasonable time was proper to go to the jury. If, as we think, it should have been submitted under certain legal restrictions, plaintiffs cannot complain of the failure, for they did not ask that this be done. *Frohs v. City of Dubuque,* 109 Iowa, 219.

IV. Plaintiffs claim the price of the Perfection weigher, in any event, because they say there was no breach of warranty as to it. But it was included in the order for the thresher, at a gross price of four hundred and fifty dollars. A rescission of the sale affected all the property covered by the order. There was a clause in the written order to this effect: "Clover-hulling attachments, baggers, weighers, wagon loaders, self-feeders, and other ex-

tra attachments are furnished at stipulated separate prices, and are subject to the above warranty." We think the provision in the order, to the effect that the failure of the warranty, as to any separate part or attachment of the machine should not affect the liability of the purchaser, except as to such part or attachment, must•be limited to a part or attachment furnished at a separate, fixed price.

V. Defendants in their answer allege that the straw-stacker was fitted to the thresher, and, without alterations in the latter, no other stacker could be used with it. Plaintiffs sought to strike this, but their motion was overruled. We cannot see how they were prejudiced, if the ruling was incorrect. And we may say in this connection, in response to an argument made, that the answer set up a defect in the stacker.

VI. Another contention is that, on the claimed breach of warranty, the stacker was not removed from the thresher as provided in the contract. Plaintiffs argue this point as though this contract required that, in case the thresher failed to work as agreed, the stacker should be removed, and the thresher operated without it. This is not the contract provision. The agreement was that, if the "stacker could not be made to fill the warranty, it is to be removed from the separator." Presumably, this was for the purpose of having it at plaintiffs' disposal on its return to them. But when, as here, both separator and stacker failed and were returned, there was no such reason for its removal, as if defendants had retained the former in their possession.

VII. What we have said covers the controlling questions in the case. A number of errors are assigned on the admission and rejection of testimony. We have examined each of the matters referred to, and find no prejudicial error in the court's rulings.—Affirmed.