R. Hall McCormick, Trustee, *et al.* Appellees, *vs.* The Unity Company, Appellant.

*Opinion filed February 19, 1909—Rehearing denied April 7, 1909.*

1. Corporations—*authority to "execute and deliver" bonds includes authority to sell.* A resolution by the board of directors of a corporation authorizing the president and secretary of the corporation, for the purpose of refunding outstanding bonds and to pay outstanding indebtedness, to "execute and deliver" a certain number of bonds, includes authority to the president and secretary to sell the bonds not needed to refund the outstanding ones and to use the proceeds to pay the outstanding indebtedness.

2. Same—*president of a corporation is presumed to have authority to deliver bonds.* The president of a corporation is presumed to have authority to deliver bonds which have been duly authorized to be issued, and an innocent purchaser cannot be required to prove that such authority was rightfully exercised.

3. Bonds—*what does not render bonds non-negotiable.* The fact that bonds issued by a corporation contain a provision reserving the right to redeem a certain number of the bonds each year by lot, at a specified premium and accrued interest, does not render the bonds non-negotiable.

4. Mortgages—*defendant in foreclosure must prove its claim of fraud in the purchase of the bonds secured.* In a proceeding to foreclose a trust deed securing bonds of a corporation which were duly authorized to be executed and delivered by the president and

secretary for the purpose of raising money to pay the outstanding indebtedness of the corporation, the defendant has the burden of showing bad faith in the purchase of the bonds, and the holders of the bonds are not required to show that the proceeds of the bonds were properly applied to pay the debts of the corporation.

5. SAME—*verified denial of execution of bonds raises no other defense.* A verified denial of the execution of the bonds secured by the mortgage sought to be foreclosed, even if such verified denial is proper in a foreclosure proceeding, raises no other question, and if the proof shows authority to execute and deliver the bonds, and actual execution and delivery in pursuance of such authority, a *prima facie* case is established notwithstanding such denial.

APPEAL, from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

The bill in this case was filed in the circuit court of Cook county to foreclose a trust deed dated January 1, 1895, upon the Unity building and its leasehold in Chicago, which trust deed was given to secure four hundred bonds of $1000 each, of which one hundred, numbered from 301 to 400, inclusive, are in issue here. July 1, 1891, the appellant, the Unity Company, gave a trust deed on said leasehold interest and the building to be erected thereon, to secure an issue of four hundred bonds of $1000 each. The Jennings Trust Company (now the Equitable Trust Company) purchased three hundred of these bonds and the other one hundred were canceled. When the second trust deed was given, to foreclose which these proceedings have been begun, three hundred of the bonds secured thereby were reserved to take up the three hundred first mortgage bonds sold to the Jennings Trust Company. No such exchange, however, appears to have been consummated. A bill to foreclose under the first trust deed was instituted in the circuit court of Cook county in 1899, which resulted in a decree of foreclosure in October, 1901. This decree was afterwards affirmed in the Appellate Court and by this court.

(*Unity Co.* v. *Equitable Trust Co.* 204 Ill. 595.) The history of these proceedings prior to the institution of this former suit is set forth at length in the statement and opinion in that case. We therefore deem it unnecessary to set out again all the details found therein. The evidence in the former proceeding, which has been introduced and made a part of this hearing, shows that John P. Altgeld, president of the Unity Company, testified that John R. Walsh, president of the Equitable Trust Company, agreed, before the second trust deed was executed, that the three hundred bonds secured by the first trust deed should be exchanged for three hundred of those secured by the second trust deed. Walsh testified in the former case and denied that he ever made such an agreement. It is apparent, however, that there was a talk about such an exchange, and that three hundred of the bonds issued under the second trust deed have always been held in reserve to exchange for the three hundred bonds issued under the first trust deed and that the exchange was not made by the Equitable Trust Company. Under the decree of foreclosure in the first proceeding, after the findings of that decree had been affirmed by this court, the property was sold January 11, 1904, to Herbert W. Holcomb, representing the trustee, for $240,000. About a year afterwards Albert M. Johnson, owner of ninety-three of the one hundred second mortgage bonds in question, redeemed from the sale by paying $253,920, and shortly thereafter appellee McCormick, as trustee of the estate of Leander J. McCormick, purchased said ninety-three bonds and the certificate of redemption for $350,348.07. On January 23, 1905, interest on the said second mortgage bonds having been defaulted, McCormick, as trustee, instituted this suit to foreclose the second trust deed. Besides the Unity Company and the trustee under the trust deed the unknown owners of seven bonds not owned by McCormick were made parties. Charles C. Adsit answered as one of the unknown owners, claiming that he was the owner

of five bonds set down to unknown parties, and appellee McCormick offered in evidence two other bonds, which it was stipulated might be offered in evidence the same as if they had been properly described in the bill. This accounts for all the one hundred bonds secured by the second trust deed over and above the three hundred that were held in reserve to exchange for the bonds of the first trust deed. The cause having been referred to a master in chancery, he reported November 30, 1906, recommending a decree of foreclosure as prayed. Both parties filed exceptions, and the court sustained McCormick's exception that six per cent interest should be allowed on the redemption money instead of five per cent, and also reduced the master's recommendation for solicitor's fees from $10,000 to $7308. With these changes the master's report was approved and a sale ordered. From this decree of sale the Unity Company appealed to the Appellate Court, where the decree of the circuit court was affirmed. From the judgment of the Appellate Court this appeal has been further prosecuted.

The board of directors of the Unity Company consisted of five members. From the time it was first organized John P. Altgeld, John W. Lanehart, Charles J. Ford, Elmer A. Kimball and Isaac M. Kuebler occupied these positions. It was testified that Ford was a brother-in-law of Altgeld. Kuebler, at the time the Unity Company was organized, was bailiff in Judge Altgeld's court, in Chicago. Kimball, who was elected secretary, was then a young attorney, who drew the organization papers. The company was incorporated for $1,000,000, divided into ten thousand shares of stock of $100 each. Altgeld, Lanehart, Kuebler and Ford each subscribed for one share. Kimball subscribed for the balance, 9996 shares, and shortly thereafter assigned 9993 of these shares to Altgeld. It appears that stock was never issued to Ford and Kuebler under their subscriptions. The stubs of the stock books introduced in evidence showed that at the time of Altgeld's death, in 1902,

Altgeld held of record 9740, James A. Sexton 150, Lane-hart 105 and Kimball five shares; but the evidence in this record also shows that many of the shares of stock so shown in the name of Altgeld and Sexton had been transferred as collateral security to various parties, and tends to show that some of them were sold outright by Altgeld.

December 13, 1894, the board of directors of the Unity Company met with all the directors present except Altgeld, and the following resolution was adopted authorizing the execution and delivery of the trust deed in question and the four hundred bonds, concerning some of which these foreclosure proceedings were started:

"WHEREAS, it is deemed advisable to refund the outstanding indebtedness of the Unity Company, issuing new bonds for the purpose of providing money to pay off such indebtedness now outstanding:

"*Be it therefore resolved by the board of directors of the Unity Company,* that the president and secretary of said company are hereby authorized and directed to execute and deliver four hundred principal bonds of this company, under its corporate seal, in the principal sum of $1000 each, * * * the proceeds and avails of all such bonds so issued to be used and applied by the officers of this company to retire all outstanding bonds, notes and other indebtedness of this company; and further, that the president and secretary of this company are hereby authorized and directed to execute and deliver a trust deed or mortgage, under the corporate seal of this company, to the Equitable Trust Company, as trustee, to secure the payment of said bonds so to be issued, and the interest thereon, as aforesaid, thereby conveying and pledging, for the purposes aforesaid, the entire property of the Unity Company aforesaid now held by said company or which may hereafter be acquired by said company.

"*Be it further resolved,* that for the better securing of the holders of the bonds of this company, that said president and secretary shall execute and deliver three hundred of the bonds to be issued, which shall be deposited by this company with the Equitable Trust Company for the purpose of exchange for an equal number of bonds of this company now outstanding, dated July 1, A. D. 1891, and that said the Equitable Trust Company, trustee, shall be authorized to make such exchange and to certify to and issue the three hundred bonds so to be deposited with it, in exchange for an equal number of bonds of this company of the issue of July 1, A. D. 1891."

The second trust deed, and the four hundred bonds secured thereby, appear to have been executed by John P. Altgeld, president of the Unity Company, and Elmer A. Kimball, secretary, and three hundred of said four hundred bonds deposited with the Equitable Trust Company to be exchanged for a like number of bonds under the first trust deed of 1891. The evidence in this and the former proceeding shows that a number of the remaining one hundred bonds were deposited by Altgeld as collateral security for notes given by him to various persons or banks or were turned over in payment of such notes, and that most, if not all, of the balance of said one hundred bonds were disposed of by John W. Lanehart in a similar manner and that a few were sold by him. They have passed through various hands, and are now held, as above stated, ninety-five by appellee McCormick and five by Adsit. Each of these one hundred bonds provides, among other things, that $1000 in gold coin is to be payable "to the bearer of this bond," with interest at six per cent per annum, "on the presentation and surrender of the annexed coupons as they severally become due," and further provides that "the Unity Company reserves the right and hereby promises that it will on the first day of July * * * in each and every year until the said bonds have been paid, pay and redeem, at 102 cents on the dollar and accrued interest, twenty of said bonds to be selected by lot by the Equitable Trust Company, trustee, providing said trustee shall give sixty days' notice to that effect, * * * and all interest on the bonds selected for redemption shall cease and determine upon and after the date given in said notice as the day upon which the Unity Company is prepared to redeem the same, and all unmatured coupons of bonds redeemed shall be surrendered and canceled." The interest coupons attached each provided, among other things, that unless the bond had been previously retired the company would pay "the bearer," etc.

Rogers & Mahoney, and Chilton P. Wilson, for appellant.

Isham, Lincoln & Beale, for appellees.

Mr. Justice Carter delivered the opinion of the court:

The chief contention of appellant is, that the resolution set out in the statement, authorizing the execution and delivery of the trust deed and bonds in question, did not authorize the sale of the one hundred bonds involved in this foreclosure. Clearly, in the former case of *Unity Co.* v. *Equitable Trust Co. supra,* this court held that the said one hundred bonds were properly in the hands of Gov. Altgeld, as president of the Unity Company, to be sold. The word "execute" frequently includes delivery. (*Hunt* v. *Weir,* 29 Ill. 83.) The word "delivery" is sometimes used meaning the change of possession of property but frequently as meaning the change of title. (*Robinson & Co.* v. *Berkey & Martin,* 111 Iowa, 550.) Manifestly, the word "sell" is included, by implication, in the words "execute and deliver" as they are used in this resolution. We concluded in the former case that these bonds were held by Gov. Altgeld, as president of the company, for sale, and all the evidence in this case tends to support this conclusion. But, regardless of other evidence, we think the resolution plainly authorized the president and secretary to sell the one hundred bonds here in question and use the proceeds to pay off indebtedness. The evidence in the former foreclosure proceeding, as in this, shows that when the $100,000 of bonds issued under the first trust deed were canceled, Gov. Altgeld, in order to save the enterprise from ruin, was obliged to raise this extra $100,000, which he did mostly by short-time paper; that after carrying the loan for several years (which in the latter part of 1894 was especially difficult to do) this resolution was passed for the purpose of raising $100,000 to take care of this indebtedness; that the

officers failed to make a sale of the $100,000 of extra bonds, as they anticipated, to the Equitable Trust Company, and that therefore it was thought advisable to dispose of the bonds as indicated heretofore in the statement of the case.

The Unity Company by its answer admits the making of the second trust deed and the execution of the four hundred bonds pursuant to the authority of this resolution and the deposit of the three hundred bonds with the trustee to exchange for the former bonds issued, but denies that the remaining one hundred bonds were issued or disposed of for value. Later on, after the evidence was all taken, the Unity Company obtained leave to file an amendment to its answer without prejudice to the proceedings already taken, and in that amendment alleged that the said one hundred second mortgage bonds were issued and disposed of wrongfully by the officers of the company, without authority or right from the Unity Company, and were disposed of for the purpose of procuring credit to said officers as individuals and for a purpose which was *ultra vires* and beyond the charter power of the company. As we understand the argument of counsel, they insist that by this answer, and also by the amended answer, the burden of showing that the officers were authorized to sell, as well as execute and deliver, these bonds, rested upon appellees, and also the burden of showing that the proceeds from the sale of said bonds were used in behalf of said appellant. The authorities cited by appellant on this question are all common law actions, where the verified plea of *non est factum* raised the question of execution and delivery, and we know of no statute by which a verified denial of execution and delivery requires the complainant in a foreclosure proceeding, such as this, to prove the execution and delivery of bonds otherwise than by the production of the bonds themselves. We are disposed to hold that section 52 of the present Practice act, (Hurd's Stat. 1908, p. 1626,) which is the same as section 33 of the old Practice act, does not apply to chancery

proceedings. Even if this were a common law proceeding, the proof showing the authority to execute and deliver the bonds in question, any other defense which would make the bonds void or voidable cannot be raised by the verified plea of *non est factum*. (*City of Chicago* v. *English,* 180 Ill. 476.) Proof that the president and secretary actually executed the bonds establishes a *prima facie* case, notwithstanding a verified denial. (*Anderson Transfer Co.* v. *Fuller,* 174 Ill. 221.) There can be no question raised on the evidence in this record as to the president and secretary actually executing these bonds.

The case of *Lloyd & Co.* v. *Matthews,* 223 Ill. 477, which is cited by appellant as upholding its contention that these bonds were executed and delivered without authority by Altgeld, we think clearly upholds his authority in that regard. It lays down the rule that the president of the company, by virtue of his office, is recognized as the business head of the company, and any contract pertaining to the corporate affairs, within the general powers of such officer, executed by the president on behalf of his corporation, will, in the absence of proof to the contrary, be presumed to have been done by authority of the corporation. The president of a corporation is presumed to have authority to deliver bonds which have been duly authorized to be issued, and an innocent purchaser cannot be put to the proof that he exercised that authority rightfully.

Appellant argues that the bonds in question are not negotiable because of the provision that some of them can be redeemed before maturity, under certain conditions, as set forth in the statement of the case. With this we do not agree. *Dickerman* v. *Northern Trust Co.* 176 U. S. 181; *Hunter* v. *Clarke,* 184 Ill. 158.

The further contention is made that even though these bonds are negotiable, as this is a foreclosure proceeding in equity, the court, under the ruling in *Olds* v. *Cummings,* 31 Ill. 188, will let in any defenses which would have been

good against the trust deed in the hands of the trustee it-
self.   It is a sufficient answer to this contention to say that
no defense has been offered which would have defeated this
trust deed in the hands of the trustee itself.

It is further contended that appellee McCormick em-
ployed as counsel the late A. M. Pence to advise him on the
legal questions involved before he made the purchase of
these bonds and certificate of redemption, and the fact that
Pence examined, among other things, the records of the
foreclosure proceedings under the first trust deed was suf-
ficient to put him upon notice that Gov. Altgeld was with-
out authority to sell these bonds.   What we have already
said we think effectually disposes of this point.   The au-
thorities cited by appellant refer to bonds of a public or
municipal corporation, but a very different rule prevails as
to the bonds of a private corporation.   (2 Morawetz on
Private Corporations,—2d ed.—sec. 596; *Bradley* v. *Bal-
lard*, 55 Ill. 413.)   No evidence was offered to indicate that
McCormick or any of the purchasers had any notice that
would put a cautious man on inquiry as to the validity of
these bonds.   We find no evidence of bad faith or negli-
gence shown on his part in the purchase of said bonds and
certificate of redemption.

The appellant company paid interest on these bonds for
four and a half years,—that is, for 1895, 1896, 1897, 1898,
and the first part of 1899.   The record shows that this in-
terest was paid invariably by checks drawn by the company
from its own bank account, and not by Altgeld, as claimed
by appellant.   These payments, taken in connection with
the other facts appearing in this record, (including those
occurring during the former foreclosure proceeding wherein
it appeared that the appellant company, through its counsel,
admitted, in effect, that these bonds were valid and prop-
erly held by Altgeld for sale and were not the property of
the company but belonged to Altgeld, and that he should
therefore have been made a party to the litigation,) estop

the company in these proceedings from denying that these bonds were valid obligations against it, (*Ragland* v. *Mc-Fall,* 137 Ill. 81,) and while we refused to decide in the former case of *Unity Co.* v. *Equitable Trust Co. supra,* who was the owner of those bonds, we did hold that there was no evidence in that record that Altgeld or his estate owned the equity therein. It is plain, also, from the statement in that opinion, that said record, in our judgment, showed that Altgeld, as president of the company, had the legal authority to sell or borrow money on these bonds.

Appellant further contends that the proof on this record fails to show that the money obtained by Altgeld and Lanehart, either from selling or borrowing on some of these bonds, was ever used for the benefit of the company. The rules of law heretofore stated governing the purchase of these bonds by appellees sufficiently answer this contention. The burden was upon appellant to show bad faith in the purchase of the bonds by the present holders. This has not been done. It will not be out of place to state in passing, however, that, so far as the proof appears in this record, we think it shows effectually that the money that was obtained by Altgeld and Lanehart by selling or pledging these bonds was actually used for the benefit of the company. Altgeld, Lanehart and Ford, three of the directors, are now dead. Kuebler, it is true, testified that he knew nothing about the sale or placing of any of these bonds as collateral, but he was present and voted for the resolution authorizing the execution and delivery of the trust deed and bonds under consideration. We think the proof also shows conclusively that Kimball, the secretary, considered that Altgeld and Lanehart had legal authority to dispose of the bonds. He not only was present at the meeting when the resolution was passed by the directors, but as secretary he signed and executed the trust deed and all of the bonds. He advised with Altgeld as to the employment of counsel to

represent the company in the first foreclosure proceedings, and it must be presumed that he was cognizant of the defense made in that case. He informed would-be purchasers of the bonds, after that foreclosure, that these bonds were a good investment, and necessarily he must then have believed that they were valid in every particular.

From the facts in this record we think the allowance of solicitor's fees was not unreasonable in amount. We are also of the opinion that the decree of the trial court was not erroneous in allowing interest at the rate of six per cent on the redemption money. The first mortgage bonds and certificate of sale bore that rate of interest, and the party redeeming was held to pay that rate on the amount of the sale. *Mosier* v. *Norton*, 83 Ill. 519; *Simpson* v. *Gardiner*, 97 id. 237; *McMillan* v. *James*, 105 id. 194.

Several other points have been discussed in the briefs, but what we have said we think fairly disposes of all the material questions that are before us for consideration.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*